Jeffrey C. Matura, State Bar No. 019893
Tabitha R. Myers, State Bar No. 030001
**Barrett & Matura, P.C.**
8925 East Pima Center Parkway, Suite 100
Scottsdale, Arizona 85258
Telephone:  (602) 792-5705
Facsimile:  (602) 792-5710
jmatura@barrettmatura.com
tmyers@barrettmatura.com

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Jacob Anderson, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>Puff Corp., a Delaware Corporation,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT** |

Representative Plaintiff Jacob Anderson, on behalf of himself and all others similarly situated, alleges the following Complaint against Defendant Puff Corp.

### INTRODUCTION

1.  This is a class action brought by Representative Plaintiff on behalf of himself, an Arizona class, and a national class, of all persons who purchased PUFFCO's PEAK vaporizer distributed by PUFFCO and its retail partners since first sold on January 15, 2018.  These vaporizers are defective.  In some cases, the battery unit does not hold a charge or does not charge at all.  In other cases, the atomizers break with a single use, or a few uses.  Atomizers are not covered by PUFFCO's limited warranty and are $39.99 to replace.

### COMMON FACTUAL ALLEGATIONS

2.  Puff Corp. ("PUFFCO") is an American manufacturing company that manufactures vaporizers for cannabis concentrates and other smoking material for use in

legal medical and adult use states.

3. Upon information and belief, PUFFCO is incorporated in Delaware, with its principal place of business in Los Angeles, California.

4. PUFFCO has been distributing and selling the PUFFCO PEAK ("PEAK") since January 15, 2018, with various iterations, colors, limited editions, and attachments. (See Exhibit A).

5. The PEAK is an electronic vaporizer used to smoke cannabis concentrates or other smoking material.

6. The PEAK retails for $379.99 and comes with the PEAK device with atomizer, a carrying case, cleaning swabs, a loading tool, a micro USB cable and "supercharger," a carb cap, and an extra ceramic bowl. (See Exhibit B).

7. The PEAK requires ceramic "atomizers" to heat the smoking material. Replacement atomizers retail for $39.99 on PUFFCO's website. (See Exhibit C).

8. The PEAK packaging comes with an instruction manual which contains instructions, warnings, and a summary of the one-year limited warranty (See Exhibit D).

9. The instruction manual accompanying the PEAK, represents that the PEAK comes with a one-year warranty "for only the electronic base." PUFFCO does not warrant the "glass, atomizers, normal wear and tear, or damage caused by accident or abuse." (See Exhibit D).

10. However, a separate warranty exists on PUFFCO's website for all "authentic Puffco-branded products," which guarantees that for the period of one (1) year, the product will be "free of defects in design, assembly, material, or workmanship." (See Exhibit E).

11. The marketing for the PEAK promotes its reliability, ensuring consumers that the "design of the PEAK maintains a consistent experience," and touts a "more consistently flavor experience." (See Exhibit F).

12. PUFFCO claims that "each component of the Peak represents an exhaustive effort to find the best possible materials and designs. Each piece interlocking, without any

glues or shortcuts, to deliver a perfect experience every time." (See Exhibit G).

13. In reality, the PEAK suffers from design and/or manufacturing defects wherein 1) the battery will not remain charged, or never charges at all; and, 2) the atomizers provided with the PEAK and replacement atomizers are defective in that they do not heat properly or at all.

14. Upon discovering that the atomizers for the PEAK are defective, many class members, including Plaintiff, foreseeably purchased—and indeed, were required to purchase based on the limited warranty included in the instruction manual—additional atomizers at $39.99 each, as PUFFCO expected, or should have expected, if not intended.

15. Many class members have continued to spend money replacing atomizers, until they realize that it is futile or that the PEAK they purchased was fatally flawed.

16. PUFFCO further discourages customer complaints and warranty claims by providing only an email address for their customer service and not a phone number. Further, consumers have reported that it takes several weeks to get reply from Customer Service, and then another several weeks for Customer Service to respond to the consumer's communication; or are unresponsive all together. (See Exhibit H).

17. The defectiveness of the PEAK atomizers is so prevalent that a business has sprung up that caters to PEAK consumers by selling repair kits to fix defective PEAK atomizers. (See Exhibit I).

18. From 2018 to the filing of the Complaint, consumers from all over the United States have reported and complained about the defectiveness of the PEAK, as well as the atomizers sold with the PEAK and replacement atomizers. (See Exhibit J).

19. The numerous Complaints by consumers resolve any doubt that PUFFCO was fully aware of the prevalence of these defects.

20. In fact, in an interview with David Downs of Leafly, Roger Volodarsky, the Chief Executive Officer of PUFFCO, admitted issues with the PEAK and compared his consumers (and PEAK purchasers) to beta software testers. (See Exhibit J).

21. Mr. Volodarsky admitted that PUFFCO was aware of the defect issues and

1  stated the following: "If you're one of the first to buy it, you're going to be one of the first to experience issues." (See Exhibit J). Despite this knowledge of the pervasive defects, no national recall action has even been undertaken by PUFFCO to warn consumers, remove the defective product from circulation, or replace the defective atomizers or batteries.

22. Instead, PUFFCO has chosen to maximize its profits and avoid the costs of fixing the defective PEAKs at the expense of its consumers, who are induced into spending money replacing atomizers at $39.99 apiece.

23. PUFFCO continues to sell defective PEAK vaporizers.

24. By this scheme, PUFFCO has unfairly reaped profits by fraudulently increasing demand for replacement atomizers. PUFFCO continues to market the PEAK and its various models and attachments, notwithstanding the maelstrom of complaints from their customers.

25. Plaintiff, on behalf of himself and all members of each of the respective classes, seek damages, interest thereon, restitution, injunctive and other equitable relief, reasonable attorneys' fees, and costs as a remedy for PUFFCO's numerous unlawful and/or deceptive business practices, as detailed herein.

**VENUE AND JURISDICTION**

26. The Court has jurisdiction over the subject matter presented by this Complaint because it is a class action arising under the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (2005), which explicitly provides for the original jurisdiction of the Federal Courts of any class action in which any member of the plaintiff class is a citizen of a state different from any defendant, and in which the matter in controversy exceeds the aggregate sum of $5,000,000.00, exclusive of interest and costs.

27. Plaintiff alleges that the total claims of the individual members of the Plaintiff class in this action are in excess of $5,000,000.00 in the aggregate, exclusive of interest and costs, as required by 28 U.S.C. § 1332(d)(2), (5). As set forth below, Plaintiff is a citizen of Arizona and PUFFCO is a citizen of Delaware. Therefore, diversity of

1  citizenship exists under CAFA and diversity jurisdiction, as required by 28 U.S.C. §§ 1332(a)(1), (d)(2)(A).  Furthermore, Plaintiff alleges on information and belief that more than two-third of all of the members of the proposed Plaintiff class in the aggregate are citizens of a state other than Arizona, where this action is originally being filed, and that the total number of members of the proposed Plaintiff class is greater than 100, pursuant to 28 U.S.C. § 1332(d)(5)(B).

28. Venue in this jurisdiction is proper pursuant to 28 U.S.C. § 1391(a) because as set forth below, PUFFCO conducts business, and may be found, in this district and Plaintiff purchased the subject product of this action in this judicial district.

**PLAINTIFF**

29. Plaintiff is an individual more than 18 years old, and is a citizen of Arizona, resident of Maricopa County.  Plaintiff respectfully requests a jury trial on all damage claims.

30. Plaintiff is an Arizona medical marijuana patient and authorized to consume cannabis under Arizona's medical marijuana law.

31. Prior to discovering the product defects summarized above, Plaintiff purchased the PEAK.  These purchases were made within this judicial district, and as the purchaser and owner of the PEAK, Plaintiff was damaged by PUFFCO's conduct, as set forth herein.

32. Plaintiff is, at was at all times relevant herein, a member of the class.

33. Plaintiff brings this action on behalf of himself, and as a class action, pursuant to Federal Civil Procedure Rule 23, on behalf of all persons similarly situated and proximately damaged by the unlawful conduct described herein.

34. Within the relevant claim period, Plaintiff purchased the PEAK.

35. Plaintiff followed the instructions provided with the PEAK, allowing the unit to charge fully before use.

36. To Plaintiff's surprise and dismay, within less than one week the atomizer provided with the PEAK stopped heating properly.  It would not heat the smoking

5

material properly and could not create smoke.

37. As the atomizer is not covered under PUFFCO's limited warranty, Plaintiff was required to purchase another atomizer at full retail price of $40.00 to enable the PEAK to work again.

## DEFENDANT

38. Defendant PUFF CORP. is an American vaporizer manufacturing company, with principal offices in Los Angeles, California that produces vaporizers for the legal cannabis industry since 2015.

39. In 2015, its first year of business, PUFFCO made $5 million in sales. PUFFCO's business relies, at least in part, the sale of replacement parts to existing customers. (See Exhibit L).

## CLASS ACTION ALLEGATIONS

40. Plaintiff brings this class action on behalf of himself and all others similarly situated, for all claims alleged herein, pursuant to Federal Civil Procedure Rule 23. The proposed class is defined as: All persons and entities that resided in the United States (including its Territories and the District of Columbia) and purchased PUFFCO PEAK Vaporizers from January 15, 2018 to the present.

41. PUFFCO, its officers, directors, employees, as well as the Judge(s) assigned to this matter, the jury in this case, and the members of their immediate families and Plaintiff's counsel's law firm(s) are excluded from the Plaintiff classes.

42. This action has been brought and may properly be maintained as a class action under Federal Civil Procedure Rule 23 because there is a well-defined community of interest in the litigation, and membership in the proposed class is easily ascertainable.

   a. <u>Numerosity</u>. A class action is the only available method for the fair and efficient adjudication of this controversy. The members of the Plaintiff classes are so numerous that joinder of all members is impractical, if not impossible. Plaintiff is informed and believe and, on that basis, allege that total number of class members is in the thousands of individuals.

    Membership in the classes will be determined by analysis of Defendants' records.

  b. <u>Commonality</u>. Plaintiff and the class members share a community of interests in that there are numerous common questions and issues of fact and law which predominate over questions and issues solely affecting individual members, including but not necessarily limited to:

    i. Whether Defendant had a duty to disclose to consumers the defect issues with the PEAK;

    ii. Whether Defendant failed to disclose or concealed material information regarding the defects with PEAK;

    iii. Whether Defendant breached any express or implied warranties;

    iv. Whether Defendant engaged in fraud;

    v. Whether Defendant's conduct and business practices violated Arizona's Consumer Fraud Act, A.R.S. § 44–1522, *et seq.*;

    vi. Whether Defendant's conduct and business practices constituted deceptive trade practices;

    vii. The total number of defective PEAK products purchased by consumers during the relevant claim period through PUFFCO directly and from each of PUFFCO's retail partners;

    viii. The total number of replacement atomizers purchased by consumers during the relevant claim period through PUFFCO directly and from each of PUFFCO's retail partners;

    ix. The profits realized from consumers' purchasers of the defective PEAK products and replacement atomizers;

    x. Whether Plaintiff and class members are entitled to relief, the amount of relief and nature of such relief, including injunctive relief and/or restitution.

  c. <u>Typicality</u>. Plaintiff's claims are typical of the claims of the Plaintiff

classes. Plaintiff and all members of the Plaintiff class sustained economic damages arising out of and caused by PUFFCO's common course of conduct in violation of law, as alleged herein.

    d. <u>Adequacy of Representation</u>. Plaintiff in this class action are adequate representatives of each of Plaintiff class in that Plaintiff has the same interest in the litigation of this case as class members, are committed to vigorous prosecution of this case and have retained competent counsel who are experienced in conducting class action litigation of this nature. Plaintiff is not subject to any individual defenses unique from those conceivable applicable to other class members or the class in its entirety. Plaintiff anticipates no management difficulties in this litigation.

    e. <u>Superiority of the Class Action Procedure.</u> Since the damages suffered by the individual class members, while not inconsequential, may be relatively small, the expense and burden of individual litigation by each member makes or may make it impractical for members of the Plaintiff classes to seek redress individually for the wrongful conduct alleged herein. Should separate actions be brought or be required to be brought, by each individual member of Plaintiff class, the resulting multiplicity of lawsuits would cause undue hardship and expense for the Court, and the litigants. The prosecution of separate actions would also create a risk of inconsistent rulings which might be dispositive of the interests of other class members who are not parties to the adjudication and/or may substantially impede their ability to adequately protect their interests.

## FIRST CAUSE OF ACTION

**VIOLATION OF ARIZONA'S CONSUMER FRAUD ACT**

ARIZ. REV. STAT. § 44-1522, *ET SEQ.*

43.     Plaintiff re–alleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

44. The Arizona Consumer Fraud Act, A.R.S. § 44-1522 *et seq.* ("CFA") states:

> The act, use or employment by any person of any deception, deceptive or unfair act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely on such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice.

45. PUFFCO is a "person" as defined by A.R.S. §44-1521.

46. PUFFCO's conduct constitutes an unfair method of competition and unfair and deceptive acts and practices under the CFA, and were undertaken in transactions intended to result in, and which in fact resulted in, the sale of goods to consumers—namely, to repeatedly sell replacement atomizers (which in turn might have also been defective) to consumers who previously purchased the defective PEAKs.

47. By engaging in the conduct described herein, PUFFCO violated A.R.S. § 44-1522 by misrepresenting and concealing the nature and scope of the defective PEAK batteries and atomizers, as Plaintiff and putative class members relied on those representations and bore the cost of multiple sets of replacement atomizers and/or otherwise incurred damages.

## SECOND CAUSE OF ACTION
## BREACH OF THE STATUTORY EXPRESS WARRANTY
### MAGNUSON-MOSS WARRANTY ACT, 15 U.S.C. § 2301, *ET SEQ.*

48. Plaintiff re–alleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

49. Plaintiff and the putative class members are "consumers" within the meaning of the Magnuson–Moss Warranty Act, 15 U.S.C. § 2301(3).

50. Defendant is a "supplier" and "warrantor" within the meaning of 15 U.S.C. § 2301(4)–(5).

51. The defective PEAKs are "consumer products" within the meaning of 15

1  U.S.C. § 2301(1).

2  52.  PUFFCO's warranty is a "written warranty" within the meaning of 15 U.S.C. §§ 2301(6).

4  53.  PUFFCO breached the warranty by, *inter alia*:

a.  Selling PEAKs with defective designs and/or defective manufacturing such that they would not hold a charge or doesn't charge at all.

b.  Selling PEAKs with defective designs and/or defective manufacturing such that the atomizer would be broken upon arrival to the consumer, or within a few uses of the PEAK.

54.  PUFFCO's breach of warranty deprived Plaintiff and thousands of putative class members benefits of their bargains.

55.  The amount in controversy in this action exceeds $50,000, exclusive of interest and costs.

56.  There are more than 100 members each of the proposed class.

57.  PUFFCO have had a reasonable opportunity to cure their breach of written warranty and failed to do so.

58.  As a direct and proximate result of PUFFCO's breach of express warranty, Plaintiff and the putative class members sustained damages and other losses in an amount to be determined at trial.

59.  Further, Plaintiff and the putative class members are entitled to, and hereby seek rescission, interest, costs of suit, attorneys' fees and/or other such relief the court deems appropriate.

## THIRD CAUSE OF ACTION
## BREACH OF EXPRESS WARRANTY

60.  Plaintiff re–alleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

61.  PUFFCO warranted that each of the PEAKs was free of defects when it sold

10

these products to Plaintiff and the putative class members.

62. This express warranty became the basis of the bargain.

63. PUFFCO breach this warranty by, *inter alia*:

   a. Selling PEAKs with defective designs and/or defective manufacturing such that they would not hold a charge or doesn't charge at all.

   b. Selling PEAKs with defective designs and/or defective manufacturing such that the atomizer would be broken upon arrival to the consumer, or within a few uses of the PEAK.

64. PUFFCO was on notice of the defects *vis-à-vis* direct complaints from Plaintiff, putative class members, the internet message boards, social media accounts maintained by PUFFCO, and from published product reviews on countless websites.

65. As a direct and proximate result of PUFFCO's breach of express warranty, Plaintiff and putative class members sustained damages and losses in an amount to be determined at trial. Further, Plaintiff and putative class members are entitled to and hereby seek rescission, interest, costs of suit, attorneys' fees and/or other such relief the court deems appropriate.

## FOURTH CAUSE OF ACTION
## BREACH OF IMPLIED WARRANTY

66. Plaintiff re–alleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

67. The implied warranty of merchantability required that PUFFCO's PEAK vaporizer be fit for the ordinary purposes for which such goods are used.

68. Plaintiff and the putative class members did not use PUFFCO's PEAK vaporizer for an abnormal use.

69. As a direct, proximate and foreseeable cause of PUFFCO's breach of implied warranty, Plaintiff and the putative class members sustained damages in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff, on behalf of himself and each member of the proposed class, respectfully request that this Court enter judgment in their favor and for the following specific relief against PUFFCO as follows:

1. That the Court declare, adjudge, and decree that this action is a proper class action and certify the proposed class and any other subclasses under Fed. R. Civ. P. 23(b)(1), (b)(2), and/or (b)(3), including appointment of Plaintiff's counsel as Class Counsel;

2. For an award to Plaintiff and members of the class of compensatory and special damages in an amount to be proven at trial;

3. That PUFFCO be found to have violated Arizona's Consumer Fraud Act, A.R.S. § 44-1522;

4. That PUFFCO be found to have violated Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*;

5. That PUFFCO be found to have breached the express and implied warranties;

6. For equitable relief enjoining PUFFCO from engaging in the wrongful conduct alleged herein;

7. For interest on the amount of any and all economic losses, at the prevailing legal rate;

8. For an award of punitive and/or exemplary damages in an amount sufficient to deter such conduct in the future;

9. For an award of reasonable attorneys' fees;

10. For all other such Orders, findings, and determinations identified and sought in this Complaint.

## JURY DEMAND

Plaintiff and members of the proposed classes hereby demand trial by jury on all issues triable of right by jury.

Dated this 29th day of March, 2019.

**BARRETT & MATURA, P.C.**

By: /s/ Jeffrey C. Matura
Jeffrey C. Matura
Tabitha R. Myers
8925 East Pima Center Pkwy, Ste 100
Scottsdale, Arizona 85258
Attorneys for Plaintiff